**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLES HANAFIN, Independent Administrator of the Estate of Beth Ann Hanafin, deceased,<br><br>Plaintiff,<br>v.<br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | Case No. 22 CV 1408<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

On May 26, 2021, Beth Ann Hanafin was driving a truck manufactured by Defendant General Motors, LLC when she lost control of the vehicle and crashed. Beth Ann Hanafin was treated for her injuries from the accident, including undergoing surgery on her spine. She died weeks later from a blood clot in her lungs, known as a pulmonary embolism. Plaintiff Charles Hanafin asserts a malfunction in the truck caused the crash, and brings strict liability and negligence claims against General Motors on behalf of himself and as administrator of her estate.

On August 15, 2025, the Court excluded the testimony of Hanafin's purported expert witnesses in whole or in part, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. [128]. General Motors now moves for summary judgment, arguing that Hanafin needs expert testimony for all his products liability claims. For the reasons discussed below, the Court grants its motion as to all claims.

**Statement of Facts**

The following facts are undisputed. Beth Ann Hanafin was driving a 2018 GMC truck on May 26, 2021, when the truck crossed the center line of the roadway, flew at least 36 feet through the air, landed in a ditch, then eventually came to a stop in a nearby field. PRDSOF[1] ¶¶ 15, 17–19. Emergency responders took Mrs. Hanafin to the hospital where she was diagnosed with spinal fractures. *Id.* ¶¶ 23, 27. She had spinal surgery to treat those injuries the following day. *Id.* ¶ 28. Mrs. Hanafin was discharged from the hospital on June 4, 2021. *Id.* ¶ 33.

---

[1] The Court cites to Plaintiff's response to Defendant's statement of facts as "PRDSOF."

Mrs. Hanafin died on June 17, 2021. *Id.* ¶ 35. The coroner listed the cause of death as a "pulmonary thromboembolism," also known as a blood clot in her lungs, "due to deep vein thrombosis of the legs due to a motor vehicle crash and post-operative back surgery." *Id.* ¶¶ 9, 41. The coroner's report listed heart disease and obesity as "significant contributing factors" in Mrs. Hanafin's death. *Id.* ¶ 41.

Obesity is a risk factor for forming deep vein thromboses, which are blood clots that form in deep veins like those in the lower legs. *Id.* ¶¶ 7, 10. At the time of her death, Mrs. Hanafin had other thromboses in her lower and mid legs. *Id.* ¶ 38. She also had blockages in her heart, including a 95% blockage in her left artery and a 50% narrowing in another artery. *Id.* ¶ 39.

According to the Complaint,[2] Mr. Hanafin (hereinafter "Hanafin") asserts that Mrs. Hanafin's pulmonary embolism was related to the vehicle crash and resulting medical care. [108] at 3, 6, 8, 11. Hanafin claims that the ball joint and control arm assembly in the truck Mrs. Hanafin was driving malfunctioned, which allegedly changed the steering response of the truck. *Id.* This caused her to lose control of the vehicle and crash. *Id.*

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may do so by pointing to a lack of evidence to support the nonmoving party's case. *Id.* at 325. The nonmoving party, then, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment must be granted for the moving party. *Celotex*, 477 U.S. at 322. In determining whether there is a genuine issue of material fact precluding summary judgment, the Court construes all facts and makes all reasonable inferences in the nonmoving party's favor. *Metzler v. Loyola Univ. Chi.*, 164 F.4th 612, 616 (7th Cir. 2026).

---

[2] Hanafin's statement of facts only cites reports and testimony from his excluded experts to describe his theory of the crash and Mrs. Hanafin's injury, which General Motors objects to as inadmissible. Hanafin may only rely on admissible facts to oppose summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Accordingly, the Court sustains that objection and instead references the factual allegations in Hanafin's Second Amended Complaint. [108].

## Discussion

General Motors moves for summary judgment on all claims, arguing that, because the Court excluded Hanafin's expert testimony, he cannot establish that the truck was defective, or that such a defect caused Mrs. Hanafin's accident. In response, Hanafin asks the Court to reconsider its prior rulings on his expert witnesses. He further contends that he can establish a defect and causation for his product liability claims without expert testimony, and that he has presented sufficient evidence to defeat summary judgment.

### I. Hanafin's Request for Reconsideration

Hanafin spends the majority of his response brief arguing that the Court should reexamine its August 15, 2025 ruling. In that order, the Court applied Federal Rule of Evidence 702 to determine whether Hanafin's expert testimony was admissible by evaluating: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (*citing Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)). Based on those factors, the Court excluded each of Hanafin's experts in whole or in part.

Although not properly styled as a motion for reconsideration, the Court weighs the substance of Hanafin's filing rather than its form and thus addresses his contentions as to each expert. *See Guyton v. U.S.*, 453 F.3d 425, 426 (7th Cir. 2006). Federal Rule of Civil Procedure 54(b) allows the Court to revise non-final orders. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). But motions for reconsideration are not the proper vehicle for "rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Instead, such motions are reserved for extraordinary cases where the court committed a manifest error of law or fact, or to consider newly discovered evidence. *Id.* at 1269.

#### A. Christopher Ferrone

Hanafin sought to have Christopher Ferrone, an engineer, opine on the design of the control arm and ball joint assembly of the truck. He also offered Ferrone's conclusion that the flawed ball joint design caused Mrs. Hanafin's crash. The Court excluded Ferrone's opinions on both the purported defect and causation as unreliable.

Hanafin now argues that the Court erred in excluding Ferrone's causation opinion because it relied on *Burns v. Sherwin-Williams Co.*, 78 F.4th 364 (7th Cir. 2023). He contends that the uncertainty and unreliability of the expert opinion in *Burns* is distinct from his present circumstances. In *Burns*, the plaintiff was injured while operating a walking forklift, and Ferrone offered an opinion about the forklift's safety. *Id.* at 370, 373. The Seventh Circuit upheld excluding Ferrone's expert testimony as unreliable. *Id.* at 374. Ferrone's opinion was not tested or subject to peer

review, nor was it generally accepted in the industry. *Id*. Because Ferrone lacked a foundation for his conclusions, the district court properly excluded Ferrone's opinion. *Id*.

Contrary to Hanafin's assertion, Ferrone's opinions in *Burns* and this matter suffer from similar flaws. As in *Burns*, the Court found Ferrone's opinion was not tested or subject to peer review. Ferrone conducted no controlled experiments or simulations, or a complete accident reconstruction. His methodology for reaching his conclusions again relied on personal experience alone. In the present filing, Hanafin points to no objectively verifiable methodology to warrant a different conclusion.

Further, in its prior ruling, the Court also relied on *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 932 F.3d 986 (7th Cir. 2019), to conclude that Ferrone's opinion should be excluded. In *Timm*, the expert conducted his own physical examination of the motorcycle wheel and tire involved in an accident, but could point to no empirical data or controlled experiments to support his conclusions. *Id*. at 994. The expert also did not conduct any testing to validate his causation opinion. *Id*. The Seventh Circuit upheld the exclusion because the expert "needed to show that his conclusions were the fruit of a rigorous, objectively-verifiable approach" and failed to do so. *Id*. That expert, too, parallels Ferrone because he failed to articulate a verifiable methodology and apply it. Ferrone concluded that a sound Mrs. Hanafin heard resembled the sound of other separations in the control arm and ball joint assembly, but never explained the basis for that opinion. He also provided no foundation for his opinion that such a separation caused the accident.

Ferrone's causation opinion has no reliable, testable methodology. The Court's application of *Burns* and *Timm* was not a "wholesale disregard, misapplication, or failure to recognize controlling precedent" that would result in a manifest error of law. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (*quoting Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Therefore, Hanafin presents no basis to reconsider the Court's earlier ruling on Ferrone's causation opinion.

Next, Hanafin contends Ferrone's defect opinion is reliable even though he conducted no testing. The Court agrees that an expert need not conduct their own testing when data is available from another source. *Anderson v. Raymond Corp.*, 61 F.4th 505, 510 (7th Cir. 2023). But that is not the concern with Ferrone's purported testimony. Ferrone may form his opinion based on data from other sources, but he must still use a reliable method to reach his conclusions. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). As with his causation opinion, Ferrone again fails to demonstrate a reliable methodology. As the Court previously described, Ferrone provides no basis for his conclusion that the ball joint required a redundancy. Regardless of the source of his data, Ferrone cannot baselessly provide a conclusion without connecting the data to his opinion. *Id*.

Hanafin also points to *Schmude v. Tricam Industries, Inc.*, 550 F. Supp. 2d 846 (E.D. Wis. 2008), to bolster his request for reconsideration. In that case, the district court permitted an expert's testimony even though his opinion was not subject to testing. *Id.* at 852–53. It found there was no "well-accepted, standardized way" to reconstruct the "specific and unique defect" that caused the ladder accident at issue. *Id.* at 853. But that was a "relatively simple accident," where a rivet holding the leg of a ladder to the cap failed. *Id.* at 852–53. The idea that the stepladder could collapse in such a situation was not "rocket science," so the district court concluded that the jury could weigh the experts' opinions without fear of bias from any unscientific principles or improper testimony. *Id.* at 853.

Hanafin recites the facts of *Schmude*, but makes no effort to explain why that case should influence the Court's ruling here. The relatively simple stepladder construction in that case differs greatly from the complex control arm and ball joint assembly at issue, so lay jurors need reliable expert testimony to understand whether it was defective. And, in any event, the district court's decision in *Schmude* is not binding precedent on this Court. *Wirtz v. City of South Bend*, 669 F.3d 860, 863 (7th Cir. 2012). This is especially true for experts, as district courts have "wide latitude and discretion" in deciding whether to admit expert testimony. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Accordingly, Hanafin presents no grounds for any errors of law, let alone manifest errors, to warrant reconsidering the admissibility of Ferrone's defect opinion. *Oto*, 224 F.3d at 606. Therefore, Ferrone's causation and defect opinions remain excluded.

### B. Mark Larkins

The Court also excluded the opinion of Hanafin's proffered medical expert Mark Larkins as unreliable. Hanafin now argues that Larkins used a reliable methodology to reach his conclusions because he performed a differential diagnosis. Hanafin further asserts that Larkins' opinion is reliable because he only needed to identify a potential cause of Mrs. Hanafin's injury, not the sole cause. He also contends that the Court improperly relied on *Robinson v. Davol Inc.*, 913 F.3d 690 (7th Cir. 2019) in excluding Larkins' testimony.

First, Hanafin points to no record evidence to support Larkins' supposed methodology. He makes only conclusory statements about what Larkins allegedly did and did not consider in rendering his opinion. The Court has no responsibility to dig through the record and find citations to shore up Hanafin's argument. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010). Further, in excluding Larkins' testimony, the Court specifically noted that Larkins disavowed using a differential diagnosis. Thus, Hanafin's argument that Larkins used a differential diagnosis, when he specifically testified that he did not, is meritless.

Second, Hanafin cites *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426 (7th Cir. 2013), to suggest that Larkins' opinion is reliable even if he did not rule out other

causes of Mrs. Hanafin's injury. In *Schultz,* the district court excluded an expert's opinion in part because he failed to rule out other possible causes of plaintiff's illness. *Id*. at 433. The Seventh Circuit reversed because, under Wisconsin law, the plaintiff only needed to establish that the product was a cause of the injury, not the sole cause. *Id*. The appellate court also found the expert's opinion reliable because he applied a differential diagnosis and therefore considered which other causes of the illness should be ruled in and ruled out. *Id*. at 433–34.

*Schultz* is not helpful to Hanafin. Unlike Larkins, the expert in *Schultz* employed a reliable methodology and considered other potential causes. *Id*. In contrast, Larkins did not conduct a differential diagnosis to reach his conclusions, and his report articulates no methodology or foundation for his opinions whatsoever. Put another way, Larkins never described what other causes he ruled in or out to reach his conclusion. Hanafin protests that Larkins' opinion is based on well-established principles, which makes it distinct from the novel theory proffered in *Robinson*. But as discussed above, Larkins "cannot simply assert a bottom line" without explaining the principles that support his opinion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

Finally, the Court properly relied on *Robinson* because Larkins' report lacks any methodology. In *Robinson*, plaintiffs maintained that the expert conducted a differential diagnosis. 913 F.3d at 696. But the only information provided was that his opinion was "founded on reliable methods, experience[,] and data." *Id*. The Seventh Circuit found this general statement was insufficient to situate the expert's conclusions within a methodology. *Id*. Larkins provides even less foundation for his opinions than in *Robinson*. *See Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) (agreeing that the district court properly excluded the expert when he failed to explain his methodology).

In conclusion, Hanafin presents no grounds for reconsidering the Court's earlier ruling. Thus, Larkins remains excluded as an expert, and his testimony is inadmissible.

### C. David Pope

Hanafin engaged metallurgist David Pope to offer opinions about the condition of various vehicle components. The Court previously excluded Pope's opinions about when, during the crash sequence, the ball joint separated from the control arm, and why it did so. It found that Pope offered no methodology for reaching those conclusions, and that he did not properly disclose the opinions in his report.

Hanafin responds that Pope employed a reliable methodology and that the undisclosed opinions caused no harm to General Motors. But Hanafin presented both of these positions in his prior briefing. Thus, he merely rehashes previously rejected arguments, which does not warrant reconsideration. *Caisse Nationale*, 90 F.3d at

1270. Further, Hanafin only makes the conclusory statement that Pope used a "process of elimination" to determine when the ball joint separated. He includes no citations to Pope's report or deposition to support any purported methodology. Such unsupported arguments are waived. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005).

Hanafin demonstrates no manifest error and only complains of the Court's prior ruling. As such, he provides no basis to reconsider the exclusion of Pope's testimony.

### D. Andrew Thomas

Finally, Hanafin sought to have Andrew Thomas offer opinions about Mrs. Hanafin's reactions during the crash sequence. The Court previously excluded Thomas' "human factors" opinion because he provided insufficient detail about his training for the Court to consider him qualified as an expert in this area. The Court also found Thomas' human factors conclusions inadmissible because he included no methodology for how he arrived at those opinions.

In his response brief, Hanafin asserts that Thomas "demonstrated a familiarity" with human factors, making his opinion reliable. But this is only a cursory conclusion, and such perfunctory and underdeveloped arguments are waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). In any event, this argument falls far short of the standard for reconsideration. *Caisse Nationale*, 90 F.3d at 1269–70.

To recap, Hanafin indicates no manifest errors in the Court's prior ruling to warrant reconsideration. Therefore, testimony from Ferrone and Larkins is excluded under the framework in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Pope's opinions regarding when and why the ball joint separated are similarly excluded, as are Thomas' opinions about Mrs. Hanafin's reactions. Because these experts' opinions are inadmissible, Hanafin may not use the testimony and opinions to oppose summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

## II. General Motors' Motion for Summary Judgment

Because Hanafin's expert testimony is inadmissible, in whole or in part, General Motors contends that Hanafin has no evidence to prove his claims. When an element of a claim requires expert testimony and that testimony is inadmissible, the Court must grant summary judgment. *In re Zimmer Nexgen Knee Implant Prods. Liability Litig.*, 218 F. Supp. 3d 700, 721 (N.D. Ill. 2016); *see Ervin*, 492 F.3d at 905 (upholding the district court's grant of summary judgment where plaintiff's expert was excluded, and plaintiff otherwise had no expert evidence to support his causation theory).

Hanafin brings four design defect claims. In Counts I and III, he brings wrongful death actions on behalf of himself to address the injury he suffered from Mrs. Hanafin's death. *See Carter v. SSC Odin Operating Co., LLC*, 2021 IL 113204, ¶ 34. Count I alleges a design defect under strict liability. Count III alleges negligence. Hanafin brings Counts II and IV as the administrator of Mrs. Hanafin's estate, seeking damages for her injuries prior to death. *See id*. Count II alleges General Motors is liable under strict liability, and Count IV asserts its liability under a theory of negligence.

Applying Illinois law,[3] to sustain a strict liability design-defect claim, Hanafin must show the product had an unreasonably dangerous condition, the condition existed when the product left the defendant's control, and the condition proximately caused Mrs. Hanafin's injuries. *Hillman v. Toro Co.*, 164 F.4th 971, 977–78 (7th Cir. 2026) (*citing Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 543 (2008)). For his negligence claims, Hanafin must establish that General Motors breached a duty of care to him and that the breach proximately caused Mrs. Hanafin's injuries. *Hillman*, 164 F.4th at 978. Hanafin must also make the threshold showing that the product was unreasonably dangerous due to a defect. *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 987 (N.D. Ill. 2010) *aff'd,* 659 F.3d 584 (7th Cir. 2011); *Baltus v. Weaver Div. of Kidde & Co., Inc.*, 199 Ill. App. 3d 821, 830 (1990). Therefore, for all of his claims, Hanafin must prove both an unreasonably dangerous condition due to a defect and that the defect was the proximate cause of Mrs. Hanafin's injury.

The experts Hanafin retained to provide opinions about the alleged defect in the control arm and ball joint assembly and how it caused Mrs. Hanafin's injuries have been excluded. So, General Motors insists that his claims must fail. In response, Hanafin contends that he can prove his products liability claims without the excluded testimony.

Products liability actions "often involve specialized knowledge or expertise outside the layman's knowledge" and thus require expert testimony. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 440 (7th Cir. 2019) (*quoting Baltus*, 199 Ill. App. 3d at 834). Because such claims cannot be resolved solely on common experience, expert testimony is needed to explain which product designs would have been acceptable. *Kirk*, 991 F.3d at 878. However, some products may be simple enough that a jury does not need expert testimony to understand their operation and design. *Clark*, 929 F.3d at 440. Whether such expert testimony is required depends on the specific facts and issues in each case. *Hakim v. Safariland, LLC*, 79 F.4th 861, 869 (7th Cir. 2023).

---

[3] The Court applies Illinois state law to this diversity jurisdiction case as the events took place in Illinois. *Birchler v. Gehl Co.*, 88 F.3d 518, 520 (7th Cir. 1996).

For example, in *Baltus*, the Illinois Appellate Court suggested that if a chair were designed to collapse easily for portability but tended to collapse when someone sat on it, the jury could decide that the design is unreasonably dangerous without expert testimony. 199 Ill. App. 3d at 836. In that instance, the jury could understand that the chair did not function as expected and was unsafe. *Id*. By contrast, the court in *Baltus* found the purported defect in the transmission jack at issue was beyond a lay jury's understanding and experience. *Id*. at 835. Thus, without expert testimony, the jury would be left to speculate about whether the design rendered the jack unreasonably dangerous. *Id*.

Another example is *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill. 2d 570 (1976), which supports this proposition. In *Tweedy*, the plaintiff was injured when the brake pedal in the car he was driving lowered to the car floor without any noticeable resistance, and without slowing the car down. *Id*. at 572. Though the plaintiff offered no expert testimony about a defect in the car's brake system, the Illinois Supreme Court still found he presented a *prima facie* case of a defective design. *Id*. at 574. The court held that, in the absence of "abnormal use" or "reasonable secondary causes," plaintiff may not need expert testimony to establish that the product failed to perform in a reasonably expected manner. *Id*.

On the other hand, Illinois courts and federal courts applying Illinois law regularly require expert testimony in design defect claims that involve complex parts of vehicles. Consider *Show v. Ford Motor Co.*, 659 F.3d 584 (7th Cir. 2011). There, the Seventh Circuit agreed that the plaintiff needed expert testimony for his claim that a defective design caused his vehicle to roll over after it was struck by another car. *Id*. at 587. The appellate court explained that lay jurors required expert testimony to understand whether the vehicle's design was unreasonably dangerous, and whether that design contributed to the rollover. *Id*. at 587–88. Without expert testimony, the record contained no evidence to help the jury understand the physics of the vehicle's construction and the accident at issue. *Id*. Thus, the appellate court found the jury would be left to speculate about the car's dangerousness. *Id*. at 588. Even more telling, the district court in that case specifically distinguished the circumstances from those in *Tweedy*. Unlike the brake failure in *Tweedy*, the purported defect that caused the car to roll over was not obvious to a lay juror. *Show v. Ford Motor Co.*, 697 F. Supp. 2d at 986. Moreover, the rollover occurred only after another car struck the vehicle. *Id*. Thus, unlike in *Tweedy*, where the jury could reasonably conclude that the injury would not have occurred absent a defect, the jury here could not use their "common sense or common experience" to infer that a design defect caused the rollover. *Id*.

Heavy machinery, too, involves complex design that requires expert testimony. In *Kirk v. Clark Equipment Company*, 2020 WL 5593750 (N.D. Ill. Sept. 18, 2020) *aff'd,* 991 F.3d 865 (7th Cir. 2021), the district court excluded an expert's opinion on both the purported design defect and causation. *Id*. at *3–4. In that case, the plaintiff brought a products liability claim when a piece of heavy machinery used for digging

and dumping materials became unstable and pinned the plaintiff's foot. *Id*. at *1. The district court found the plaintiff could not establish causation without his expert's testimony because the machine's design and operation were beyond the understanding and experience of a layperson. *Id*. at *5. Further, his theory of causation required an explanation of how the machine worked and how it became unstable. *Id*. Similarly, in *Stevenson v. Windmoeller & Hoelscher Corp.*, 2021 WL 1978348 (N.D. Ill. May 18, 2021), another district court found the plaintiff needed expert testimony on both the purported defect and causation. *Id*. at *3. In that case, plaintiff alleged injuries from an industrial machine that extrudes plastic. *Id*. at. *1. The machine at issue was "a specialized piece of industrial equipment that the vast majority of the population has never seen or used," and therefore beyond a lay juror's knowledge. *Id*. at *3. Thus, without expert testimony to establish how the machine caused his injury, the plaintiff could not survive summary judgment. *Id*.

*Show*, *Kirk*, and *Stevenson* all involved highly technical aspects of vehicle and heavy machinery design and operation, similar to the truck control arm assembly at issue here. Like the plaintiffs in those cases, Hanafin seeks to hold General Motors responsible for a defect beyond a layperson's common knowledge. Though the average juror may drive a car, that does not mean they understand "the principles behind their construction and operation." *Show*, 659 F.3d at 587. Here, jurors need expert testimony to understand how a ball joint connects to the vehicle's control arm and how that mechanism affects steering. Hanafin also needs expert testimony to explain that an alleged design flaw caused the ball joint to separate, and to rule in and out other possible causes. Further, the evidence shows that Mrs. Hanafin had multiple risk factors for developing blood clots before the accident. Since the origin of her pulmonary embolism is not obvious to a lay person, Hanafin needs expert testimony to establish that causal chain, too. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (considering the need for expert testimony in a Federal Employers' Liability Act claim). Unlike in *Tweedy*, where it was clear that the brakes should have stopped the car unless they were defective, the mechanics and operation of a control arm ball joint are not common sense. Hanafin therefore requires expert testimony to establish that the truck Mrs. Hanafin was driving had a defective design, and that such a defect caused her injuries. Because the Court excluded Hanafin's proffered expert testimony, he cannot defeat summary judgment.

Even if Hanafin could present his claims to a jury without expert testimony, he still fails to create a genuine issue of material fact. To survive summary judgment, Hanafin must demonstrate "more than a mere possibility that the product caused the injury." *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 770 (7th Cir. 2015). He argues that the ball joint at issue had a 10-year life expectancy and thus failed prematurely. Hanafin further speculates that a jury could conclude that the ball joint failed before Mrs. Hanafin left the roadway based on the noises she reported hearing during the accident and on expert observations of the vehicle. However, Hanafin primarily relies on reports from his excluded experts to establish these facts. To create a genuine

dispute of material fact, Hanafin must cite to admissible evidence. *Marvin v. Holcomb*, 72 F.4th 828, 833 (7th Cir. 2023).

The only admissible, disputed fact that Hanafin raises concerns the post-accident condition of the vehicle and the ball joint itself. But that alone cannot establish a defect in the truck that caused Mrs. Hanafin's injury. At best, this disputed evidence suggests the ball joint should have remained connected to the control arm despite the accident. But it says nothing about the ball joint's design or whether that design was unreasonably dangerous. *See Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 874 (1992) ("[L]iability in a products liability action cannot be based on mere speculation, guess, or conjecture, and the circumstances shown must justify an inference of probability as distinguished from mere possibility."). Hanafin cannot overcome summary judgment with merely a hypothetical defect assertion. *See Schaefer v. Universal Scaffolding & Equip. LLC*, 839 F.3d 599, 605 (7th Cir. 2016) (plaintiff was unable to establish liability based on defective design because the scaffolding bar at issue was lost and therefore he could not prove it was defective). This single fact alone is insufficient to raise more than a metaphysical doubt about a genuine issue for trial. *Matsushita Elec. Indus.*, 472 U.S. at 586–87.

Altogether, Hanafin's claim of a design defect in the truck's control arm and ball joint assembly involves knowledge of complex machinery beyond that of a lay juror. Thus, Hanafin's claims require expert testimony, and without any admissible expert opinions, no reasonable jury could find in his favor. Accordingly, the Court grants General Motors' motion for summary judgment.

## Conclusion

For the reasons stated above, the Court grants General Motors' motion for summary judgment [143]. Hanafin presents no reasons to reconsider the Court's prior ruling excluding his experts' opinions. Because Hanafin's design defects require expert testimony to establish both a defect and that such defect caused Mrs. Hanafin's injury, there is no genuine issue of material fact on those elements of his claims, and they fail as a matter of law. The Court sympathizes with Hanafin and the loss of his spouse in this accident. But, under the circumstances presented to this Court, judgment must be entered in favor of General Motors and against Hanafin.

**SO ORDERED.**

Dated: October 1, 2026

Sunil R. Harjani
United States District Judge